UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Harvey Pratt</u>

     v.                            Civil No. 05-cv-191-JD

<u>Warden, Northern New Hampshire</u>
<u>Correctional Facility</u>


<u>O R D E R</u>

Harvey Pratt, who is proceeding pro se, seeks relief through a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from his conviction and sentence on a charge of interfering with the custody of a minor in violation of New Hampshire Revised Statutes Annotated ("RSA") § 633:4.  The court previously granted summary judgment in favor of the warden on three of Pratt's ineffective assistance of counsel claims and his jurisdictional claim. Pratt's remaining claims, however, were insufficiently addressed in the warden's previous motion.  The warden now moves for summary judgment on the remaining claims.


<u>Background</u>

The pertinent background information was provided in the court's previous order.  Neither Pratt nor the warden has introduced a different factual record for purposes of this motion.  Therefore, the background facts are repeated here as follows.

Pratt met Jamie Buffington through the Internet.  Jamie said that she was sixteen, when she was actually fourteen, and Pratt was thirty-three.  Pratt lived in Quincy, Massachusetts, and Jamie lived with her father and step-mother in Londonderry, New Hampshire.

On February 10, 2000, Jamie called Pratt and told him she wanted to leave home and live with him.  Pratt told her to get as far from home as possible and that he would pick her up.  Jamie hitchhiked from her home to the Mall of New Hampshire in Manchester.  Pratt drove to Manchester and picked Jamie up at a KMart near the Mall.

Pratt drove Jamie to his apartment in Quincy.  Jamie testified that Pratt gave her money, kissed her, discussed having sex with her, gave her beer and offered her other alcohol, and told her to tell his roommate and anyone else at the apartment that she was eighteen.  He also offered Jamie his telephone to call home, but Jamie did not use it.  When Jamie's father found she was missing, he contacted police.  With information from Jamie's step-sister, the police found Jamie at Pratt's apartment.  Jamie's father drove to Quincy to pick her up and provided her computer to the police who sent it to the Federal Bureau of Investigation for analysis.[1]

---

[1]The FBI found messages sent by Pratt to Jamie that indicated he told her he was twenty-five and liked younger women and that suggested she was planning with him to leave home.

Pratt was indicted in September of 2000 on one count of interference with custody.  He was tried and found guilty on August 14-15, 2001.  Pratt appealed on the ground that the evidence was insufficient to support his conviction.  The New Hampshire Supreme Court affirmed his conviction without a published decision.  Pratt then filed pro se motions to amend his sentence, for a new trial, and to quash the indictment.  Counsel were appointed to represent Pratt on the motions to amend sentence and for a new trial, and the motion to amend sentence was granted on appeal.  After a hearing, Pratt was resentenced, but his motions for a new trial and to quash the indictment were denied.  The supreme court declined Pratt's appeals.

## Standard of Review

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a).  "'The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prevents a federal court from granting an application for writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Knight

v. Spencer, --- F.3d ---, 2006 WL 1148484, at *5 (1st Cir. May 2, 2006)(quoting Norton v. Spencer, 351 F.3d 1, 4 (1st Cir. 2003)). If the claim was not adjudicated on the merits, it is reviewed under a de novo standard. Lavallee v. Coplan, 374 F.3d 41, 43 (1st Cir. 2004).

Because the state court summarily disposed of the claims at issue here without even naming all of them, this court raised an issue in response to the warden's first motion for summary judgment as to what standard of review should apply. The warden urges that the deferential standard should apply in this case, arguing that any denial of Pratt's claims by the state court merits deferential review. As the court pointed out in the previous order, the circuits differ on how to apply the deferential AEDPA standard when the state court's decision is unclear as to whether a federal claim was actually decided. See, e.g., Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006); Lambert v. Blodgett, 393 F.3d 943, 969 n.15 (9th Cir. 2004). The First Circuit follows the view "that a mere recognition and rejection of the federal claim without any further discussion still invokes AEDPA deference." White v. Coplan, 399 F.3d 18, 23 (1st Cir. 2005); DiBenedetto v. Hall, 272 F.3d 1, 6 (1st Cir. 2001) ("[W]hen the state court has addressed the federal constitutional issue, it is its ultimate outcome, and not its rationalization, which is the focus.").

4

It is far from clear in this case, however, whether the state court recognized the federal claims in the group of claims that were summarily denied.  After considering and rejecting several claims of ineffective assistance of counsel and a claim that the trial court lacked jurisdiction, the court stated:  "The Court has also considered the remainder of defendant's claimed errors, including prosecutorial misconduct, bias of the trial judge, juror bias, and other bases for ineffective assistance of counsel.  The Court finds these allegations are not supported by the record and are otherwise without merit."  State v. Pratt, 00-S-1624, at *10 (Rockingham County Sup. Ct. Aug. 20, 2004).  Although the deferential standard might apply, at least as to the remainder of the ineffective assistance of counsel claims, in an abundance of caution, the court will address the claims under the de novo standard, determining whether Pratt is in custody in violation of the Constitution or federal law.  § 2254(a).

<u>Discussion</u>

Pratt's remaining claims in support of his petition for a writ of habeas corpus are prosecutorial misconduct, the lack of an impartial judge, and ineffective assistance of trial and appellate counsel.  As noted above, three ineffective assistance of counsel claims and Pratt's jurisdictional claim were previously resolved on summary judgment.  The warden now seeks summary judgment on the remaining claims.

5

Pratt was convicted of one count of felony interference with a minor in violation of RSA 633:4.  That crime is defined as follows:

> A person is guilty of a class B felony if such person knowingly takes from this state or entices away from this state any child under the age of 18, or causes any such child to be taken from this state or enticed away from this state, with the intent to detain or conceal such child from a parent, guardian or other person having lawful parental rights and responsibilities as described in RSA 461-A.

RSA 633:4, I.  As such, the felony offense of interference with a minor requires the state to prove that the defendant knowingly intended to take or entice a child under eighteen away from New Hampshire with the intent to detain or conceal the child from her parent or guardian.  See State v. Pratt, Case No. 2001-748 (N.H. Nov. 6, 2002) (unpublished decision).


A.  Prosecutorial Misconduct

Pratt alleges that during his criminal trial the prosecutor made improper comments and arguments, introduced evidence of "prior bad acts," leaked information to the press causing prejudicial publicity, failed to preserve evidence, "committed fraud on the tribunal" and introduced fabricated witness statements, and proceeded with insufficient evidence to convict him.  Pratt also alleges that the prosecutor failed to disclose exculpatory evidence of his own telephone bill and of Jamie's parents' marital settlement agreement.

6

1.  Prosecutor's Comments and Argument

Pratt alleges in generalities that the prosecutor made improper comments and argument during his criminal trial.  Pratt argues that the prosecutor improperly portrayed his crime as sexual assault rather than interference with custody, the crime with which he was charged.  His one example of an allegedly improper comment by the prosecutor is that during his closing argument, the prosecutor told the jury that Pratt "was as guilty as guilty gets."

Prosecutorial misconduct consisting of improper comment or argument provides a basis for habeas relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. De Christoforo, 416 U.S. 637, 643 (1974); accord Moreno Morales v. United States, 334 F.3d 140, 148 (1st Cir. 2003).  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  "Closing arguments traditionally have included appeals to emotion . . . .  The outer limit on emotional appeals is generally stated as a prohibition against arguments calculated to inflame the passions or prejudices of the jury."  United States v. Nelson-Rodriguez, 319 F.3d 12, 39 (1st Cir. 2003) (internal quotation marks omitted).  The due process analysis for claims of prosecutorial misconduct focuses on "the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455

7

U.S. 209, 219 (1982).  Unless the trial was fundamentally unfair, no due process violation occurred.  <u>Darden</u>, 477 U.S. at 183.

Pratt's counsel objected before closing argument that the prosecutor should be prevented from arguing that Pratt intended to have sexual relations with Jamie.  He contended Pratt's sexual intentions were irrelevant because Pratt was not charged with attempted sexual assault and such intentions were not pertinent to enticement or intent to conceal for proving interference with custody.  Pratt's counsel also contended that such argument was inflammatory.  The judge, however, agreed with the prosecutor that the government's theory that Pratt intended to have sex with Jamie was relevant to the government's proof of enticement and concealment, was supported by the evidence, and was appropriate for closing argument.  The record amply supports the prosecutor's theory and nothing suggests that the prosecutor's theory of Pratt's motive, as expressed in his closing, so undermined the fairness of the trial as to cause a due process violation.

In his closing, the prosecutor said that Pratt enticed Jamie away from home to come to Massachusetts with him "for his own deviant purposes."  App. to Ans. at 266.  He also said that Pratt intended to conceal Jamie from her parents and that he was not going to let them know that she was with him.  The prosecutor concluded:  "He is as guilty as guilty gets. . . .  Don't let this guy go on this charge.  Don't let him go."  <u>Id.</u>

Pratt asserts that the prosecutor's remark that Pratt was

8

guilty violates due process.  Courts have considered similar remarks by prosecutors in closing argument and found no due process violation.  <u>See</u>, <u>e.g.</u>, <u>Darden</u>, 477 U.S. at 181 n.12 (finding no unfairness where prosecutor repeatedly made statements pertaining to guilt in closing, including that defendant "shouldn't be out of his cell unless he has a leash on him," that prosecutor wished victim "had blown [defendant's] face off," and that prosecutor wished defendant had been killed); <u>Duckett v. Mullin</u>, 306 F.3d 982, 990 (10th Cir. 2002) (denying habeas relief despite prosecutor's remark during closing:  "'The evidence says he's guilty.  Don't you be a party to turning a cold-blooded murderer loose.'"); <u>Mims v. Dipaolo</u>, 2000 WL 50373, at *3 (1st Cir. 2000) (unpublished decision) (citing cases and finding no due process violation when prosecutor, in closing, described victim's screams without evidentiary basis and repeated vile names used by defendant); <u>United States v. Tipton</u>, 964 F.2d 650, 656 (7th Cir. 1992) ("This court has refused to adopt a defendant's curious view that it is improper for the prosecution to argue to the jury that defendant is guilty."); <u>Therrien v. Vose</u>, 782 F.2d 1, 4 (1st Cir. 1986) (finding no due process violation in prosecutor's statement during closing:  "What we are saying is we know [defendant] shot them.").  In addition, the trial judge in Pratt's case instructed the jury that their verdict must be based on the evidence and that argument by the lawyers in their closing statements was not evidence, which

mitigated any unfair prejudice the prosecutor's remarks might have caused.  See Darden, 477 U.S. at 182.

    2.  Evidence of Prior Bad Acts

A writ of habeas corpus will not be granted based on a violation of state evidentiary rules.  Petrillo v. O'Neill, 428 F.3d 41, 44 (1st Cir. 2005).  "To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Id. at n.2.  The Supreme Court has not decided whether improperly admitted evidence of other bad acts would violate due process. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) (citing Estelle v. McGuire, 502 U.S. 62, 75 (1991)); see also Torres v. Runnels, 137 Fed. Appx. 96, 97 (9th Cir. 2005) (unpublished decision); Johnson v. Greiner, 56 Fed. Appx. 38, 39 (2d Cir. 2003) (unpublished decision).  Other courts have concluded that improper use of evidence of prior bad acts infringes a defendant's due process rights, for purposes of habeas review, only if such evidence was introduced without any legitimate purpose or was so prejudicial as to make the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995); Jervis v. Hall, 622 F.2d 19, 21 (1st Cir. 1980); Holden v. Mechling, 2006 WL 758287, *6 (M.D. Pa. Mar. 22, 2006).

Pratt objects to the evidence at trial that he gave Jamie

beer at his apartment, contending that the evidence had no
legitimate purpose and was introduced only "to inflame the
passions and prejudices of the jury."  Obj. at 2.  The prosecutor
introduced evidence that Pratt gave Jamie beer as part of the
state's proof of enticement and to show that Pratt did not merely
intend to help a troubled teenager, as the defense contended.
To the extent Pratt also contends that the prosecutor improperly
introduced evidence that he kissed Jamie and suggested that they
have sex, that evidence also was relevant to the state's proof of
Pratt's motive to entice Jamie away and to conceal her from her
parents.  Therefore, the challenged evidence was probative of
elements of the charged crime and was not unfairly prejudicial.

### 3.  Publicity

Pratt asserts that during his criminal trial the prosecutor
"leaked" information to the media that resulted in prejudicial
stories published in several newspapers.  He contends that those
"leaks" constituted prosecutorial misconduct.  The warden points
out that the articles Pratt cites do not clearly indicate the
source of the information in the stories but suggest that the
reporters were merely repeating the prosecutor's statements made
in court during the trial.  The warden also contends that Pratt
lacks evidence that the newspaper stories constituted prejudicial
publicity or that the jurors were aware of them.

Media publicity infringes the due process rights of the

accused if it prejudices the jury.  See Palmariello v. Supt. of M.C.I. Norfolk, 873 F.2d 491, 495 (1st Cir. 1989).  Prejudice is not to be presumed absent extreme circumstances.  Mu'min v. Virginia, 500 U.S. 415, 428-29 (1991).  Further, a prosecutor is not responsible for media reports about a criminal trial unless he has control over the content or timing of the article.  See United States v. Coast of Me. Lobster Co., 538 F.2d 899, 901-02 (1st Cir. 1976).

The newspaper articles that Pratt quotes in support of his claim of prejudicial publicity present the state's view of the case as the reporters heard it during trial.  According to Pratt, the Eagle Tribune article published on August 15, 2001, during his trial, attributed its information about the case to the prosecutor's opening statement.  The Boston Herald article attributed its information to the prosecutor's closing argument. The quote attributed to the prosecutor in the Eagle Tribune on August 17, 2001, aired after the jury's guilty verdict on August 16, 2001.  Therefore, Pratt offers no support for his theory that the prosecutor provided prejudicial pre-verdict information about the case to the reporters.  With respect to the juxtaposition of an article about a kidnaping on Long Island with the story about his case in the Boston Herald, Pratt does not suggest that the prosecutor exerted any control over the newspaper's format.  The publicity Pratt cites does not show or even suggest prosecutorial misconduct.

In addition, Pratt offers no evidence that the jury was
aware of the cited newspaper stories.  He claims that his counsel
brought a copy of one of the newspapers to the court during trial
and that the newspaper stories generated comments on television
and in the newspapers.  The circumstances of the publicity, as
Pratt describes them, do not support a presumption of prejudice,
and he fails to provide any evidence that his case was prejudiced
by the publicity he cites.

### 4.  Failed to Preserve Evidence

In support of his motion for a new trial, Pratt contended
that his criminal trial was tainted by prosecutorial misconduct
because the state failed to preserve evidence by allowing files
to be deleted from Jamie's computer.  The state's failure to
preserve evidence that is potentially useful to the defense "does
not violate due process 'unless a criminal defendant can show bad
faith on the part of the police.'"  Illinois v. Fisher, 540 U.S.
544, 547 (2004) (quoting Arizona v. Youngblood, 488 U.S. 51, 58
(1988)).  The good faith of the police is a complete defense
unless the government deliberately destroyed or altered
exculpatory evidence, that is if the evidence possessed "an
exculpatory value that was apparent before the evidence was
destroyed, and [was] of such a nature that the defendant would be
unable to obtain comparable evidence by other reasonably
available means."  DiBenedetto, 272 F.3d at 12-13; accord United

States v. Garza, 435 F.3d 73, 75-76 (1st Cir. 2006).

Pratt charges that the police did not retrieve Jamie's computer from her family until twenty-eight days after he was arrested and that during that intervening time, more than 100 files were deleted from the computer.  Pratt suggests that Jamie's father, who is familiar with computers, could have deleted the files.  He faults the police for failing to take possession of and protect the computer sooner.  Although Pratt states that the deleted files could have exonerated him, he provides no insight into what he believes the files would have shown.  More importantly, Pratt does not have any evidence or make any allegations that the police or the government knew the files were exculpatory and were complicit in their destruction or that the police acted in bad faith.  Therefore, Pratt has not shown a material factual issue that would avoid summary judgment.

### 5.  Withheld Evidence

Pratt also contends that the prosecutor withheld exculpatory evidence from him in violation of due process.  Specifically, Pratt alleges that the prosecutor failed to disclose Pratt's own telephone bills to him and failed to give him a copy of Jamie's parents' marital settlement agreement.  Prosecutorial misconduct based on a claim of withheld evidence requires that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that

14

evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Banks v. Dretke, 540 U.S. 668, 691 (2004).

The prosecutor, of course, did not suppress evidence of Pratt's own telephone bills, which were his property and as available to him as to the state. The state disclosed Jamie's parents' marital settlement agreement on February 24, 2004, in the context of Pratt's motion for a new trial. Although Pratt argues that the settlement agreement was material to his jurisdictional claims and to a defense of impossibility, those issues have been resolved against him with the benefit of the settlement agreement in evidence. In addition, Pratt offers no evidence that the government withheld the settlement agreement either willfully or inadvertently. Therefore, that claim fails.

### 6. Fraud and Fabricated Victim Statements

Although Pratt charges that the prosecutor "committed fraud on the tribunal in the presentation of evidence," it is not clear what evidence Pratt asserts was fraudulent. In his response to the warden's motion for summary judgment, Pratt states: "Testimony of 'having actual sex' [] was not only inadmissible [], but was fabricated." In support of that statement, Pratt cites to the prosecutor's argument to the judge in opposition to the defense's motion for a directed verdict and to Jamie's testimony about Pratt's sexual overtures to her.

15

A prosecutor's knowing use of perjury to obtain a conviction is a due process violation.  Moreno Morales, 334 F.3d at 148.  In this case, however, Pratt has not provided any evidence of false testimony, much less that the prosecutor knowingly used perjury to obtain his conviction.  Therefore, Pratt has failed to properly oppose summary judgment on that claim.

Pratt also contends that the prosecutor introduced fabricated victim impact statements during his sentencing proceeding.  A sentence that is based on misinformation of a constitutional magnitude, meaning materially untrue information on which the sentencing court relied, is a violation of due process.  See United States v. Tucker, 404 U.S. 443, 447 (1972); Townsend v. Burke, 334 U.S. 736, 741 (1948); Lechner v. Frank, 341 F.3d 635, 638–39 (7th Cir. 2003); McPhail v. Renico, 412 F. Supp. 2d 647, 653–54 (E.D. Mich. 2006).  Pratt provides no evidentiary support for his claim that the challenged victim impact statements were fabricated and bases his claim on only his "information and belief."  That is insufficient to oppose summary judgment.  Fed. R. Civ. P. 56(e); Perez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001).

### 7.  Insufficient Evidence

Pratt has raised the issue of insufficiency of the evidence in several different contexts:  on direct appeal following his conviction; as a claim of ineffective assistance of counsel in

16

support of his motion for a new trial, and as a claim of
prosecutorial misconduct here.  The New Hampshire Supreme Court
ruled that the evidence presented at Pratt's criminal trial was
sufficient to convict him.  <u>State v. Pratt</u>, Case No. 2001-748
(N.H. Nov. 6, 2002) (unpublished decision).  The state court
ruled on the issue in the context of an ineffective assistance of
counsel claim in Pratt's motion for a new trial, concluding that
the evidence was sufficient to prove beyond a reasonable doubt
that Pratt interfered with the custody of both Jamie's mother and
father, and counsel was not deficient in failing to raise that
issue.

        In denying Pratt's ineffective assistance of counsel claim
in the prior order, this court ruled that Pratt failed to show
that the state court's decision was erroneous, much less an
unreasonable application of federal law.  Although the claim now
appears in the guise of prosecutorial misconduct, the result is
the same.  Pratt has not shown any material dispute as to whether
the evidence was sufficient to support his conviction, and
summary judgment is appropriate as to that claim.


B.  <u>Impartial Decision Maker</u>

        Pratt contends that the judge at his criminal trial was
biased against him.  He supports that claim with references to
the judge's unfavorable rulings and alleged errors during the
criminal proceedings.  A judge's rulings, statements, errors, and

17

misjudgments in the course of a trial that "'neither . . . relied
upon knowledge acquired outside such proceedings nor . . .
displayed deep-seated and unequivocal antagonism that would
render fair judgment impossible'" are insufficient to show bias
or prejudice.  In re United States, 441 F.3d 44, 67 (1st Cir.
2006) (quoting Liteky v. United States, 510 U.S. 540, 553 n.2
(1994)).  The rulings and statements Pratt cites do not
demonstrate bias of any kind.  Therefore, the warden is entitled
to summary judgment on Pratt's claim of judicial bias.


C.   Ineffective Assistance of Counsel

     In addition to the ineffective assistance of counsel claims
that were resolved in favor of the warden in the court's previous
order, Pratt alleges a host of additional ineffective assistance
claims arising from his representation during trial and on
appeal.  Pratt faults his trial counsel for failing to call his
roommate, Jasper Tisdale, as a witness; failing to call an expert
witness; failing to object to prosecutorial misconduct, including
the prosecutor's opening and closing statements; failing to file
unspecified motions in limine; failing to move to suppress
unspecified illegally obtained evidence; failing "to object to
the specificity in the indictment"; failing to propose proper
jury instructions and failing to object to the jury instructions
that were given; failing to raise and preserve unspecified issues
for appeal; failing to investigate; failing to know the

18

applicable law; making "illogical and incomprehensible remarks on the record"; failing to cross examine unspecified witnesses; failing to "meaningfully challenge the State's case against petitioner"; failing to advocate zealously on his behalf, and failing to object to "variance between the indictment and the evidence presented at trial."  Pratt asserts that his appellate counsel "failed to know the law and omitted significant and obvious State law issues," failed to raise meritorious issues on appeal, and failed "to brief hearsay claim."

Claims of ineffective assistance of counsel are examined under a two-pronged test, asking first whether counsel's "representation fell below an objective standard of reasonableness," and, if so, whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688 (1984); accord Smiley v. Mahoney, 422 F.3d 17, 20 (1st Cir. 2005).  "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight."  Knight, 2006 WL 1148484, at *8.  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Smiley, 422 F.3d at 20 (quoting Strickland, 466 U.S. at 694).

Most of Pratt's ineffective assistance of counsel claims

merely state general complaints without any specific development
of the claim in the context of his case.  The absence of specific
facts to support those claims prevents the court from applying
the two-prong analysis that is necessary for evaluating an
ineffective assistance of counsel claim.  In addition, the non-
moving party cannot oppose summary judgment based "merely upon
conclusory allegations, improbable inferences, and unsupported
speculation."  Forestier Fradera v. Municipality of Mayaguez, 440
F.3d 17, 21 (1st Cir. 2006) (internal quotation marks omitted).

    Therefore, the warden's motion for summary judgment is
granted as to Pratt's claims that his counsel's failed to file
unspecified motions in limine, failed to move to suppress
unspecified illegally obtained evidence, failed to propose or
object to unspecified jury instructions, failed to object to the
indictment on unspecified grounds, failed to raise and preserve
unspecified issues for appeal, failed to investigate, failed to
challenge the state's case, failed to object to an alleged
variance between the indictment and the evidence at trial,[2]
failed to present a proper closing argument, and any other
generic claims.  Similarly, Pratt's claims based on his appellate
counsel's representation are too general to survive summary
judgment.  The remainder of his claims are addressed as follows.

---

    [2]To the extent Pratt argues he was charged with interference
with custody but was tried for sexual assault, that claim is not
properly developed and is not supported by the record.  As is
noted above, the evidence of his sexual overtures toward Jamie
was admissible to prove his motive and the element of enticement.

## 1.  Jasper Tisdale

Pratt contends that his counsel was constitutionally ineffective because he did not call his roommate, Jasper Tisdale, to testify at trial.  Pratt contends that Tisdale would have testified that Pratt called him, while Jamie was in the car, and told him that Jamie was fifteen or sixteen.  He theorizes that Tisdale's testimony would have undermined Jamie's testimony that Pratt told her to tell Tisdale she was eighteen.

Jamie was fourteen at the time of the incident with Pratt, and she testified that she told Pratt she was fourteen before she met him, and before he drove her to his apartment when he talked with Tisdale.  Despite that knowledge, Pratt asserts that he told Tisdale Jamie was fifteen or sixteen.  Although testimony that Pratt told Tisdale Jamie was younger than eighteen might have raised some question about why he would instruct Jamie to tell Tisdale she was eighteen, it would also show that Pratt lied to Tisdale about her age.  Given the mixed consequences of that testimony and the strong presumption that counsel would make that choice for tactical reasons rather than through neglect, counsel's failure to call Tisdale as a witness was not constitutionally deficient representation.  See Knight, 2006 WL 1148484, at *10.

## 2.  Expert Witness

Pratt contends that his counsel should have consulted with an expert about the information the state retrieved from Jamie's computer.  He believes that an expert "would have provided testimony on the mumbojumbo from the computer" that would have undermined the state's evidence.  Pratt has not developed that claim, however, to explain what an expert would have provided that would have helped the defense.  Cf. Dugas v. Coplan, 428 F.3d 317, 327–32 (1st Cir. 2005).  In addition, the computer evidence was not pivotal to the defense theory in Pratt's case, particularly in light of Jamie's testimony and the testimony of her step sister and the police officers.  Cf. id.  In the absence of any properly supported theory that a computer expert would have been beneficial to his case, this claim fails.  See Neverson v. Farquharson, 366 F.3d 32, 45 (1st Cir. 2004).

## 3.  Prosecutorial Misconduct

Pratt faults his counsel for failing to object to the alleged prosecutorial misconduct that he also raised, separately, in support of habeas relief.  Contrary to Pratt's view, counsel did object to several of the challenged incidents.  In addition, because the incidents and circumstances Pratt cites did not amount to prosecutorial misconduct, counsel's failure to object was not constitutionally deficient representation.

22

4. Zealous Advocate

A criminal defendant is entitled to have counsel who provides effective assistance on his behalf in the adversarial process and who adequately presents his nonfrivolous claims on appeal.  Strickland, 466 U.S. at 686-87; Smith v. Robbins, 528 U.S. 259, 278-79 (2000).  In support of his claim that his counsel failed to advocate for him, Pratt contends that his counsel constructively withdrew from representing him, and he cites a list of his counsel's statements that he believes were illogical, incomprehensible, or demonstrated paranoia toward the court, criticizes his counsel's cross examination of the state's witnesses, and faults him for not cross examining two police officer witnesses.

Counsel is deemed to have withdrawn from representing a criminal defendant if "counsel fails meaningfully to oppose the prosecution's case."  Florida v. Nixon, 543 U.S. 175, 178 (2004) (citing United States v. Cronic, 466 U.S. 648, 659 (1984)).  In that case, prejudice to the defendant is presumed.  Cronic, 466 U.S. 658-59.  A finding that counsel abandoned his client and provided no representation at all is reserved for the most extreme cases.  United States v. Theodore, 354 F.3d 1, 7 (1st Cir. 2003).

Neither trial counsel nor appellate counsel in Pratt's case constructively withdrew from representation.  The court has reviewed the cited remarks, challenged cross examinations, and

23

the lack of cross examination of the police officers and finds no
deficiencies, much less deficiency of a constitutional magnitude.
Appellate counsel filed the appropriate papers on appeal, and
Pratt's general challenge that appellate counsel failed to raise
other unspecified meritorious issues does not present a material
issue as to that representation.   Therefore, the warden is
entitled to summary judgment on this claim.

### 5.  Familiarity with Applicable Law

Because the New Hampshire Supreme Court held that
enticement, rather than concealing, is the culpable act for
proving a charge of interference with custody, Pratt faults his
counsel, at trial and on appeal, for focusing on his intent, or
lack thereof, to conceal Jamie.  He contends that counsel was
unfamiliar with the applicable law.  This claim is the same as or
at least closely related to Pratt's claim that counsel was
ineffective because he focused on intent to conceal rather than
on enticement.  That claim was resolved against Pratt, and the
same reasoning applies.

Counsel's choice to focus the defense on evidence of the
intent to conceal, rather than on enticement, does not
demonstrate ignorance of the applicable law.  Given the state's
evidence of Pratt's efforts to entice Jamie away from home and
the strong presumption that counsel would choose to pursue the
intent issue for tactical reasons rather than through neglect,

24

counsel's choice does not demonstrate a failure to know the applicable law and was not constitutionally deficient representation.  See <u>Knight</u>, 2006 WL 1148484, at *10.  Therefore, the warden is entitled to summary judgment on this claim.

<u>Conclusion</u>

For the foregoing reasons, the warden's second motion for summary judgment (document no. 26) is granted.  As all of Pratt's claims in support of his petition for a writ of habeas corpus have been resolved against him, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 23, 2006

cc:  Harvey Pratt, pro se
     Nicholas P. Cort, Esquire